MARY ANN McKEOWN

v.

JOHN JAMES McKEOWN et al.

A resulting trust in lands claimed from the payment of the purchase-money thereof, either by the complainant alone or in common with others, will not be raised against the consideration clause of the deed, and after great delay on complainant's part, except by clear proof.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. Lippencott*, for complainant.

*Mr. J. Chapman*, for John James McKeown.

THE CHANCELLOR.

This suit is brought to establish a resulting trust in favor of the complainant in a house and two lots of land in Weehawken, the title whereto is in her brother John. The defendants are John and his wife, and another brother, Joseph, and his wife. The latter two are made parties on account of a conveyance of the property in question made by John to Joseph in 1872. The latter swears, however, that the conveyance to him was to secure a loan, which was repaid and the property reconveyed. The

McKeown *v.* McKeown.

allegation of the bill on which the complainant's claim rests, is, that she being out at service and making good wages, and having little or no personal expenses, laid up her money for years in her mother's hands, on the understanding and agreement that when the deposit should amount to enough for the purpose, it should be employed by her mother in buying a house for her; that in pursuance of that understanding and agreement her mother purchased, for $400, the land in question, paying for it out of the complainant's money in her hands, and afterwards, with like funds, built a two-story frame house, at a cost of $1,000, on it; that the complainant, so soon as the building was completed, moved into it and had exclusive use of one room (she still however, it appears, continued at service), and occupied the rest of the house in common with her father and mother; that she always, up to the time when John ejected her from the property and took exclusive possession himself, which was May 1st, 1872, supposed that the title had been taken in her name, but she then found it had been taken in his. The proof on her part consists of her testimony as to her depositing her wages with her mother for safe keeping, and verbal statements made by her mother as to the money with which the lot was purchased and the house built, and a statement made by John that he borrowed the money to build the house from his mother. The testimony as to the statements of the mother is incompetent, and if it were not so, it would be entirely unreliable. She appears to have said, on one occasion, that the property was "between John and Mary Ann" (the complainant), that they both had money in it; and on another occasion she said that it belonged to both of them, and that their father had some money in it too. In the same conversation she claimed the property as her own. On the trial of an indictment in 1872, against John and his father for an assault and battery on Mary Ann, she swore that not a penny of Mary Ann's money was in the house, nor the money of any one else but John. Mary Ann had, on the trial, sworn that she owned the property. It would seem that both Mary Ann and her sister, Mrs. Currie (sworn for her in this cause), charged their mother with having perjured herself in that statement. The statements

of the mother on the subject, if competent, would manifestly be of but little value. But the case shows the purchase by John of the lots in 1866, for $400, and he swears that he paid that money with his own money; that of the $400, $200 were money which he had in a savings bank, and the rest was money which he had in his mother's hands, where he had placed it for safe keeping. He built the house. He swears that he paid for it entirely with his own money and money which he borrowed, but that he borrowed only $170 of it from his mother, which he repaid to her. He exercised all acts of ownership over the property, paying taxes for it as his own, and obtaining insurance on the building as his property, and, as far as appears, his absolute right to the property was not questioned until 1872. It was then denied by the complainant, but she did not file her bill until September, 1878. The mother did not die until the summer of 1874, so that the complainant for two years or thereabouts, while her mother was living, after her claim was denied both by John and her mother, took no steps to establish her claim to the property. And it was not until four years after her mother's death and six years after her right to the property was denied that she brought her suit. Her delay may be accounted for by her ignorance and helplessness. As before stated, she was a servant, and it is quite probable that she is fairly to be regarded as *inops consilii;* and her delay is, indeed, not to be looked upon as the delay of those better aware of their rights, and the means by which they may be maintained, would be. Yet it is unfortunate for her that, for whatever reason, her application for relief was deferred until after the death of her mother. It appears, too, by the evidence of Joseph, who swears that the land was purchased and the house built by James, with his own money, that when John bought the property he showed Joseph the deed, and that the latter read it in the presence and hearing of the complainant. He swears, also, that the complainant had an account in the Greenwich Savings Bank; that he saw her bank-book and was with her when she made a deposit there, which she said was $140, and he swears that she said it was the last of the money which John owed her, and that she had got it from her mother. John swears that he

repaid the $170 in several payments, the last of which was $140. All the documentary evidence is in favor of John, and he swears (and he is corroborated in material respects by Joseph) that he bought the land and built the house entirely with his own money or money which he borrowed. If any money of Mary Ann's which was not repaid, indeed, went into the property, I am unable to find clear proof of it; and it is established that when a trust is sought to be raised as a resulting trust from the payment of the purchase-money, the proof must be very clear of the payment of the purchase-money by the person in whose favor a trust by implication of law is sought to be raised; the fact must be distinctly established by satisfactory evidence. And further, that a resulting trust will not be held to arise upon payments made in common by one asserting his claim and the grantee in the deed, when the consideration is set forth in the deed (as it is in this case) as moving solely from the latter, unless satisfactory evidence is offered, exhibiting the portion which was really the property of each, and establishing the fact that the payment was made for some specific part or distinct interest in the estate. *Cutler* v. *Tuttle, 4 C. E. Gr. 549.* In this case, as was said in the case just cited, the testimony relied on is unsatisfactory as to the question whether any, and if so, what portion of the consideration money of the conveyance was the property of the complainant, and is too unreliable to justify the court in divesting a title evidenced by deed of conveyance, and in favor of a person whose claim is rested on the uncertain foundation of parol proof. It is true that McAtavey swears that while John was building the house, he told him that he got the money for building it from his mother, but the defendant absolutely and positively denies it. He says that the building cost him between $900 and $1,000; that he had to borrow some of the money to pay for it; that he borrowed $100 of John M. Gibson and $100 of his brother Joseph, and about $170 from his mother, $370 in all, and furnished the rest of the money himself. Again, the admission is, at most, that he obtained the money from his mother, not from the complainant; and, besides, it is not necessarily a confession that he obtained all of the money to build the house from that source. He admits that he borrowed

$170 from his mother to aid him in building, but swears that he repaid it, adding $30 to it to cover interest. I think it is quite probable that money which his mother received from Mary Ann for safe keeping went into the property; but the burden of proof is on the complainant, and I cannot find such evidence of the necessary facts as would warrant a decree in her favor.

The bill will be dismissed, but without costs.